# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SARAH GOSNEY, as assignee and as
Personal Representative of the
Estate of Jerry Welch; JOHN VOSE,
PIZZA TIME INC., and PIZZA TIME
HOLDINGS OF WASHINGTON, INC.,

Respondents/Cross Appellants,

v.

FIREMAN'S FUND INSURANCE
COMPANY and THE AMERICAN
INSURANCE COMPANY, foreign
insurance companies,

Appellants/Cross Respondents.

DIVISION ONE

No. 74717-7-I
(consol. with No. 74812-2-I
and No. 74813-1-I)

PUBLISHED OPINION

FILED: May 31, 2018

DWYER, J. — Following a five-week trial, the jury returned its special verdicts. After the jury was dismissed, it became apparent that the parties disagreed as to what exactly the jury had been asked and what its answers meant. The trial judge, based on his understanding of what he had asked the jury to decide, entered a significant judgment in favor of plaintiff Gosney. However, applying judicial estoppel, the judge declined to enter judgment on the jury's verdicts in favor of plaintiffs Vose and Pizza Time.

Defendant Fireman's Fund appeals from the judgment entered against it and in favor of Gosney. Vose and Pizza Time cross-appeal from the trial court's denial of relief. For good measure, all parties seek relief from various other trial court rulings.

We reverse the trial court's judicial estoppel rulings. In all other respects, we affirm the various decisions of the trial court.

I

John Vose is the owner and sole shareholder of Pizza Time, Inc. and Pizza Time Holdings of Washington, Inc. (collectively PT). Vose owns and operates several corporate PT stores and also acts as a franchisor with 30 to 35 franchisees. As the franchisor, Vose personally prepared operational manuals for his franchises that were then incorporated into the franchise agreement by reference. These operational manuals purported to give Vose control over various aspects of franchisee employment procedures, including the right to terminate franchisee employees for any reason at any time.

Ethan Shaefer owned and operated a PT franchise store prior to and following Vose's acquisition of the PT franchise. Unbeknownst to Vose, one of Shaefer's pizza delivery drivers—Angela Heller—had a poor driving record and a criminal background. On September 1, 2005, Heller, who had been drinking on the job, drove her car across the center line while making a delivery. Heller caused a head-on collision and killed the driver of the other car, Jerry Welch. Vose visited Shaefer shortly after receiving word of the collision. Shaefer told Vose that he had called his attorneys and that he had insurance.

In September 2006, Jerry Welch's widow filed suit against PT in Thurston County. Sarah Gosney—Welch's daughter—was later substituted as the personal representative and plaintiff in the underlying action.[1] Vose's attorney informed him that, pursuant to the franchise agreement, Shaefer would have to indemnify and defend PT.

PT has had insurance through Fireman's Fund Insurance Company (Fireman's) since 2005. PT's insurance policy required Fireman's to indemnify it for up to $1.5 million pursuant to a "non-owned auto policy" and an additional $1 million pursuant to a "general liability policy."

Vose first informed Fireman's of the automobile collision and ongoing litigation on January 31, 2008. Gosney had extended an offer to PT and Shaefer to settle for policy limits. Trial was scheduled for April 21, 2008. Fireman's began investigating coverage and liability on February 8, 2008. On February 21, 2008, Gosney's counsel, David Beninger, wrote to Robert Novasky, counsel for both Vose and Shaefer, to notify Novasky that Gosney's offer to settle would remain open for only seven more days. Novasky forwarded this letter to Paul Badaracco, Fireman's primary claims handler assigned to the matter, for resolution.

On February 22, 2008, Badaracco wrote to Vose to acknowledge receipt of his claim. Badaracco noted that "[a]lthough this incident occurred on Sept 1, 2005 and the lawsuit was filed on Sept 14, 2006, Fireman's Fund's first notice of

---

[1] We refer to the Welch estate as "Gosney."

this claim and ongoing litigation was . . . on Feb. 8, 2008, some two and a half years after the accident."

Novasky wrote to Badaracco again on February 28, 2008. Novasky stated that "[a]ll other defendants have tendered their policy limits, but plaintiff is demanding a 'global' settlement that requires the tender of all available policy limits." Novasky requested that Fireman's contact Beninger to confirm Fireman's position with regard to the demand.[2]

Fireman's appointed counsel John Matthews of Jackson & Wallace, LLP to defend PT. Matthews contacted Novasky to discuss the case and review court documents. Matthews then contacted Vose and received his approval to request a continuance of the trial date. Trial was rescheduled for December 29, 2008. Gosney withdrew the global settlement offer as a result of the continuance.[3]

On March 27, 2008, Badaracco wrote to Vose to inform him that PT's coverage for nonowned business automobile exposure covered up to $1.5 million[4] in losses and that the current claim "could result in damages in excess of

---

[2] Just one day prior to receiving this letter, Fireman's had internally concluded that it was not prejudiced by the late notice and that it had a duty to defend PT in the underlying action.

[3] Badaracco did not inform Vose that continuing the trial date would result in the withdrawal of the settlement offer. Gosney's expert witness testified:

> Well, this gets to the proposition that by continuing the case, you are rejecting the settlement offer. So at that point it's a choice. You have got to decide what you want to do. But the consequences of continuing means that the chances for [PT] and Mr. Vose to get settled within limits is going to be withdrawn. So my belief, my opinion, based on the Washington standards, are [that] they have to tell the insured and get the insured's choice. Do you want us to file for a continuance or do you want us to accept the settlement?
>
> . . . .
>
> . . . I'm not sure that Mr. Vose has any idea that the settlement was going to be withdrawn, if he files for the continuance. I didn't see anything where that was explained to him to say if we do this the settlement offer is gone, and we can't tell you whether it'll ever come back.

[4] As discussed herein, the policy actually provided a total of $2.5 million in coverage.

. . . policy limits." Badaracco advised Vose to retain counsel to advise him "with respect to any potential excess exposure above the referenced limits."

Patricia Anderson, an attorney representing Gosney, later contacted Fireman's to request a copy of the PT insurance policy. On July 17, 2008, counsel for Fireman's sent Anderson a copy of the policy and confirmed that Fireman's "continues to reserve any and all rights and defenses that may now exist or that may arise in the future." Anderson then contacted Howard Bundy, corporate counsel for PT. Anderson told Bundy that Gosney was interested in reaching a settlement and was willing to discuss a settlement "involving an agreement or covenant not to execute against personal assets, in exchange for an assignment of the claims against the insurance company and a stipulated judgment."

Bundy, who had not represented Vose or PT on any matter related to the Gosney litigation, advised Vose to retain independent counsel. Vose then forwarded the settlement offer to attorney Matthews. Matthews asked Bundy to "please forward these emails and offers to the counsel that [PT] and/or John Vose hires to represent him personally on this coverage issue, as we cannot advise our client on coverage matters." Bundy then agreed to represent Vose in the Gosney litigation.

## Settlement

Gosney and Vose reached a settlement on September 2, 2008.[5] The settlement offer required Vose and PT to assign to Gosney "all rights, privileges, claims, causes or chose of actions that they may have against their insurer," including any arising out of the "handling of the claims or suit related thereto, as well as arising out of the insurance contract, obligations, investigation, evaluation, negotiation, defense, settlement, indemnification . . . bad faith, negligence, malpractice, breach of contract, fiduciary breach, Consumer Protection Act[[6] (CPA)], Insurance Fair Conduct Act[[7] (IFCA)], punitive damages and/or otherwise." The settlement offer reserved to Vose and PT all elements of damages "for their personal emotional distress, personal attorneys' fees, personal damages to credit or reputation and other non-economic damages" arising from the assigned causes of action.

The settlement offer did not specify a dollar amount. Rather, it provided:

> Defendants do hereby stipulate and agree to having partial judgment entered against them for the full insurance limits to avoid any delay in executing, garnishing or collecting those offered assets. Plaintiffs agree to withhold formal entry of this partial judgment for fifteen (15) days to allow the insurers to pay all insurance proceeds to the Luvera Trust Account, in trust for the Welchs. Defendants are entitled to a credit, offset and partial satisfaction of any judgment for the amounts paid by their insurers.
> Further, the parties agree to have the full amount of the damages and/or judgments determined by stipulation approved as reasonable by the Court, or arbitration. The parties agree to use good faith efforts to reach a stipulated covenant judgment, contingent upon a reasonableness finding by the court. . . .

---

[5] Gosney and Shaefer apparently reached a separate settlement. The record before us does not disclose either the timing or terms of that settlement.

[6] Ch. 19.86 RCW.

[7] RCW 48.30.010-.015.

The settlement offer further provided for a 12 percent interest rate accruing and compounding annually on the unpaid damages from the date of signing. Finally, the settlement offer contained a covenant not to execute or enforce the judgment against Vose or PT.

Gosney and Vose—on behalf of himself and on behalf of PT—signed the settlement agreement. Bundy then sent a copy of the settlement agreement to Fireman's along with a letter demanding the payment of policy limits and notice under the IFCA. Fireman's never responded to Bundy and never agreed to the settlement offer.

On December 19, 2008, Thurston County superior court Judge Gary Tabor entered judgment against Vose and PT for $2.5 million with interest accruing at 12 percent per annum from September 2, 2008. Judge Tabor also issued an order approving the settlement as reasonable as to Welch's minor children. Jackson & Wallace filed a notice of intent to withdraw effective January 29, 2009.

On September 1, 2009, Gosney filed suit against Fireman's and named PT and Vose as codefendants. The complaint alleged negligence, breach of the CPA, breach of the IFCA, breach of contract, and breach of the specific unfair claims and settlement practices regulation.[8] In its answer, Fireman's asserted the affirmative defenses of waiver and estoppel, contributory fault, and fraud or collusion in the settlement.

---

[8] WAC 284-30-330.

Arbitration

On November 1, 2010, Fireman's moved to stay the action "until Plaintiffs and Defendant [PT] conduct and conclude their arbitration to determine the final value of the settlement in their underlying litigation." Fireman's argued that a stay was necessary because

> [Fireman's] cannot effectively defend itself in this lawsuit without resolution of the underlying settlement amount, which, if proven reasonable, will form the "presumptive measure of damages" in this lawsuit. [PT] claims it cannot provide [Fireman's] written discovery responses . . . without jeopardizing its position in the eventual arbitration of the settlement amount. This leaves [Fireman's] in a litigation quandary, precluding [Fireman's] ability to prepare for and receive a fair trial.

King County Superior Court Judge Laura Inveen granted Fireman's motion to stay on November 30, 2010. The stay was granted pending the final determination of damages by either "stipulated amount approved as reasonable by the court," or "final arbitration decision."

Gosney and Vose decided to enter arbitration. On September 17, 2012, Beninger notified John Bennett, outside counsel representing Fireman's, of the date and time of the arbitration. Arbitration was scheduled for November 1, 2012 before former King County Superior Court Judge Charles Burdell.

Beninger described the scope of the arbitration as "all remaining issues." Bennett responded to the notice asking what the "remaining issues" included. On October 4, 2012, Bennett again wrote to Beninger asking "what issues the parties intend to arbitrate." Bennett stated that "[t]ime is of the essence if Fireman's Fund is to make an informed decision whether to participate in the arbitration and to prepare to participate," and demanded that Beninger respond

- 8 -

by the following day. Beninger responded simply that "[t]he issues subject to arbitration are broad."

Bennett wrote to Beninger on October 9, 2012, declining to participate in the arbitration. Bennett explained,

> As I am sure you understand, Fireman's Fund cannot reasonably participate in an arbitration when it does not know what will be arbitrated. Your response that the issues to be arbitrated are "broad" does not provide the information Fireman's Fund needs to be able to participate in the arbitration.
> Also, Fireman's Fund is concerned that defendants have shared with plaintiff all confidential information relating to matters at issue in the arbitration, which would preclude any potential for a fair hearing of the matters in dispute. Your response ignores that concern.

Bennett extended an offer to pay for a transcription of the arbitration. Beninger replied, "It seems like you are trying to generate reasons to avoid the arbitration, rather than participate in good faith. Please keep in mind that you moved the court and compelled the arbitration of all remaining issues." Beninger rejected the offer to pay for transcription of the arbitration. In response, Bennett asserted that Fireman's had no good faith duty to participate in the arbitration as Fireman's was not a defendant and the arbitration was not a reasonableness hearing.[9]

Following the arbitration, Judge Burdell valued Gosney's claim at $10,800,289. Judge Burdell found that PT and Vose were jointly liable for the damages, that there was no bad faith, collusion, or fraud between the settling

---

[9] Although Beninger declined to elaborate on the topics to be arbitrated in his correspondence with Bennett, Beninger did discuss the arbitration with Bundy. On October 29, 2012, Beninger provided a nonexclusive list of the arbitration topics to Judge Burdell. The topics included liability, total damages, contributory fault, fraud/collusion or bad faith, and the "reasonable amount of covenant judgment." Beninger did not provide Fireman's with this list.

parties, and that the damages award was a reasonable covenant judgment amount. Judge Burdell further found that Fireman's had "notice and opportunity to participate, submit evidence and be heard." The award caption included Fireman's as a party.

The arbitration proceeding was unusual and is one of the most contentious subjects in this proceeding. King County Superior Court Judge Sean O'Donnell summarized some of the arbitration oddities:

> Mr. Vose admitted personal liability (pursuant to the settlement agreement) when he was not named in the lawsuit brought by Mr. Welch's estate. Prior to reaching an amount for damages and prior to the arbitration, Mr. Bundy . . . turned over the confidential Jackson Wallace attorney file to Mr. Benninger [sic] (at Mr. Benninger's [sic] insistence). Mr. Bundy and Plaintiffs' counsel discussed the issues to be arbitrated well in advance of the hearing, and Mr. Bundy even provided Mr. Benninger [sic] with favorable case law prior to appearing before Judge Burdell.
>     At the arbitration hearing itself, Mr. Bundy failed to submit his own trial brief, he failed to call a single witness to testify, he failed to offer his own exhibits, he failed to call an expert in franchisor liability, and he agreed that Ms. Heller (the driver who killed Mr. Welch) was an employee of Pizza Time (the franchisor) when, in fact, Ms. Heller only worked for the franchisee. He also was silent to the fact that Fireman's Fund was listed in the caption of the arbitration brief (and other pleadings) as a party, when Fireman's Fund was not. Neither he nor Mr. Benninger [sic] made any effort to correct this error before Judge Burdell.
>     Additionally, Mr. Bundy failed to contest the difference between the damages award and the reasonableness finding/amount entered by Judge Burdell. The corollary to that concession is that Mr. Bundy agreed that Fireman's was liable for the total damage amount, with no discount afforded to Mr. Vose/Pizza Time for issues related to franchisor liability. Finally, the hearing was truncated, lasting only a matter of hours.

On November 16, 2012, Thurston County Superior Court Judge Thomas McPhee determined that the arbitration award was reasonable and entered judgment against Vose and PT for $10,800,289 (hereinafter "underlying

judgment"). The judgment included pre- and postjudgment interest accruing at the rate of 12 percent compounded annually from September 2, 2008 until paid.[10] On April 12, 2013, Judge Tabor granted Fireman's motion to remove its name from the caption of the arbitration award. Judge Tabor granted the requested relief but wrote on the order, "Court makes clear this does not affect the award or goes to any of the merits or repercussions of the award."

On August 23, 2013, Fireman's moved for partial summary judgment in this action, asserting that "(1) as a matter of law Fireman's Fund is not bound by the arbitration award and judgment obtained against [Vose and PT] and that, therefore; (2) Plaintiffs' claim against Fireman's Fund for the amount of the arbitration award should be dismissed." King County Superior Court Judge Timothy Bradshaw denied the motion.

On November 26, 2013, Judge Bradshaw entered an order preventing Fireman's from deposing Beninger. On January 27, 2014, Judge Bradshaw entered an order "to preclude attempts to relitigate the underlying Thurston County wrongful death action, issues and judgment."

Trial

Judge O'Donnell presided over a five-week jury trial in April and May 2015. At the close of Plaintiffs'[11] case, Fireman's moved for judgment as a matter of law pursuant to CR 50(a). Fireman's argued that the covenant judgment was the result of fraud and collusion, that Fireman's had not harmed

---

[10] Judge McPhee noted that Fireman's was given notice of the arbitration and refused to participate. Fireman's is not listed as a party in the caption of the judgment.
[11] We refer to Gosney, Vose, and PT collectively as "Plaintiffs."

Vose, and that Vose was judicially estopped from recovering damages because of his failure to disclose his claim during a prior bankruptcy proceeding. The trial court denied Fireman's motion but reserved ruling on the issue of judicial estoppel.

The jury was asked to resolve five claims: negligence, breach of contract, breach of the CPA, breach of the IFCA, and breach of the duty of good faith. The jury was instructed on Fireman's affirmative defenses of fraud, collusion, excuse of performance by estoppel, and excuse of performance by waiver.

At trial, Plaintiffs argued various violations of the duty of good faith. The jury was instructed that an insurer "that refuses to defend in good faith voluntarily forfeits its ability to protect itself against a settlement in excess of policy limits unless the settlement or arbitration is the product of fraud or collusion." Instruction 22. The jury was further instructed:

> An insurance company will be bound by the findings, conclusions and judgment entered against their insured when it has adequate notice and an opportunity to intervene in the underlying action. The insurer is bound to what might, or should, have been litigated as well as to what was actually litigated. An insurer is not entitled to litigate factual questions that were resolved in the liability case by judgment or arm's length settlement.
> This instruction applies only in the absence of fraud or collusion.

Instruction 38.

> If you find that Fireman's failed to act in good faith by breaching its duty to defend and/or settle, then the law presumes that Plaintiffs Pizza Time and Mr. Vose were injured and that the failure to act in good faith was the proximate cause of this injury. You are bound by that presumption unless you find that Fireman's failure to act in good faith did not injure Plaintiffs Pizza Time and Mr. Vose.

- 12 -

Fireman's bears the burden of proof that any failure to act in good faith did not injure Plaintiffs Pizza Time and Mr. Vose.

Plaintiffs bear the burden of proving the amount of damages.

For all other claims that Fireman's failed to act in good faith, Plaintiffs have the burden of proving each of the following propositions:

(1) That Fireman's failed to act in good faith;

(2) That Plaintiff Pizza Time or Mr. Vose was damaged; and

(3) That Fireman's failure to act in good faith was a proximate cause of Plaintiff Pizza Time's or Mr. Vose's damages.

If you find from your consideration of all of the evidence that each of these propositions has not been proved, your verdict on the claim of failure to act in good faith should be for Fireman's. On the other hand, if each of these propositions has been proved, you must consider Fireman's affirmative defenses.

Instruction 53.

If your verdict is for the Plaintiffs on their claim that Fireman's Fund/American Insurance Company failed to act in good faith, then you must determine the amount of money that will reasonably and fairly compensate the plaintiffs for such damages as you find were proximately cause[d] by Fireman's Fund/American Insurance Company's failure to act in good faith.

If you find for the Plaintiffs on their claim that Fireman's Fund/American Insurance Company failed to act in good faith as to [the] duty to defend or settle, your verdict must include the amount of the judgment on the arbitration award, unless you further find for Fireman's Fund/American Insurance Company on its affirmative defense that the settlement was the product of fraud or collusion. The judgment amount is $10,800,289, plus interest.

Instruction 54.

The interrogatories on the special verdict form, and the jury's answers, were as follows:

**QUESTION 1a: Plaintiffs' Claims**

Have the Plaintiffs proven all elements of any or all of their claims as to the Defendants? (The elements of these claims are described in the accompanying Jury Instructions.)

ANSWER: (Check "yes" or "no")

- 13 -

| | |
|---|---|
| Negligence | X___Yes ___No |
| Breach of Contract | X___Yes ___No |
| Breach of the Consumer Protection Act | X___Yes ___No |
| Breach of the Insurance Fair Conduct Act | X___Yes ___No |
| Breach of Duty of Good Faith | X___Yes ___No |

**QUESTION 1b**

If you answered "yes" to Question 1a as to Breach of Duty of Good Faith, did you find a breach of the duty to defend or settle?

X___ ·Yes ___No

**QUESTION 2: Contributory Negligence**

QUESTION 2A: Have the Defendants proven that Plaintiffs were contributorily negligent?

ANSWER (Check "yes" or "no")

___Yes X___No

. . . .

**QUESTION 3: Defendants' Defenses**

Have the Defendants proven all elements of any or all of their defenses? Answer each of the subparts below. (The elements of these claims and defenses are described in the accompanying Jury Instructions.)

ANSWER: (Check "yes" or "no")

| | |
|---|---|
| Fraud | ___Yes X___No |
| Collusion | ___Yes X___No |
| Excuse of Performance by Estoppel | ___Yes X___No |
| Excuse of Performance by Waiver | X___Yes ___No |

**QUESTION 4a: Damages**

Based on the jury instructions, what amount of damages, if any, do you find were incurred by Plaintiffs John Vose and Pizza Time?

*(INSTRUCTION No. 1: Do not duplicate damages across multiple claims.)*

*(INSTRUCTION No. 2: Do not reduce the damages for Negligence for any contributory negligence you may find in Question 2. The Court will determine that amount.)*

|  | Damages: |
|---|---|
| Negligence: | $100,000.00 |
| Breach of Contract: | $20,000.00 |
| Breach of Duty of Good Faith: | $300,000.00 |
| Breach of Consumer Protection Act: | $20,000.00 |
| Breach of the Insurance Fair Conduct Act: | $20,000.00 |

**Question 4b:**

If you awarded damages in Question 4a, does the damages amount include the judgment?

_____ Yes                    ____X____ No

**SUPPLEMENTAL QUESTION:**

Of the damages identified in the Verdict Form in Question 4a, what is the total dollar amount of damages incurred by Plaintiff John Vose, as opposed to those incurred by Pizza Time?

$240,000.00

Following receipt of the jury's verdict, the trial court discharged the jury and granted Plaintiffs' motion to prohibit contact with the jurors. Plaintiffs later filed a presentation of judgment, asserting that the amount that should be entered as the principal judgment amount, based on the jury's verdict, was

- 15 -

$11,260,289. In response, Fireman's argued that the jury did not award the amount of the underlying judgment and that, even assuming that it did, Fireman's was not bound by that judgment.

The trial court agreed with Plaintiffs as to the legal effect of the jury's verdict and entered judgment in favor of Plaintiffs.[12] The trial court awarded interest on the underlying judgment beginning from the date of entry of the arbitration award. The trial court also concluded that Fireman's was estopped from contesting the arbitration award. The trial court found that Fireman's had sufficient notice of the arbitration hearing, that the arbitration hearing was "actually litigated," and that Fireman's was in privity with Vose and PT at the time of the arbitration hearing.

Fireman's then filed a motion for reconsideration. The trial court reviewed the jury's special verdict and concluded:

> The jury here made a factual determination of plaintiffs' bad faith damages *other than* and *in addition* to the covenant judgment in the amount of $300,000.00. The jury accordingly found harm as a result of Fireman's . . . failure to act in good faith. But the

---

[12] Little time was spent addressing the jury's finding that Fireman's had established its defense of excuse of performance by waiver.

Plaintiffs argued to the trial judge that the "contractual concept of waiver of performance expressed in the court's instructions has no application to plaintiffs' statutory claims, nor to the tortious bad faith or negligence claims." Memo. in Supp. of Presentation of J. at 5. In response, Fireman's appeared to agree that the finding was not of significance: "[T]he waiver finding is not necessary, but it's certainly helpful. . . . I think the waiver finding may, may be pertinent, but it's certainly not necessary to uphold what the jury did and to uphold the specific amounts that they found, were the damages proximately caused by Fireman's conduct." In its order entering judgment in favor of Plaintiffs, the trial court addressed the jury's finding in a footnote:

> The jury found that Mr. Vose/Pizza Time waived Fireman's Fund duty to provide a defense. The jury made no mention of Fireman Fund's separate contractual duty to settle. Nor does the jury's waiver finding implicate Fireman Fund's independent statutory duty to settle (which the jury found Fireman's Fund breached). Indeed, Plaintiffs correctly point out that breach of Fireman's independent good faith duty to settle is grounded in tort and not contract law.

Fireman's has neither assigned error to the trial court's order with respect to the issue of waiver nor has it otherwise discussed the jury's finding in its briefing.

plaintiffs' floor on damages had already been determined by entry of the Thurston County judgment (resulting from the arbitration/reasonableness hearing). . . . As a matter of law, the jury's apparent conflict in the verdict form (finding harm for the breach of duty of good faith but not writing in the amount) must be resolved to include the arbitration amount.

The trial court then addressed Fireman's judicial estoppel claim. Pursuant to CR 50(a), Fireman's had moved to bar Vose from collecting on the jury's damages award based on Vose's failure to disclose a potential claim against Fireman's during a prior bankruptcy proceeding. The trial court agreed with Fireman's and concluded that both Vose and PT were judicially estopped from recovering damages.

The trial court entered judgment in favor of Gosney and against Fireman's, awarding Gosney the amount of the underlying judgment and accrued interest totaling $15,612,624.34. The trial court additionally awarded Gosney attorney fees and costs totaling $2,484,542.50 and awarded Vose and PT attorney fees and costs totaling $405,612.50. The trial court's awards of attorney fees and costs included a lodestar multiplier of 1.25. Fireman's now appeals. Gosney, Vose, and PT cross-appeal.

## II

"An insured may independently negotiate a settlement if the insurer refuses in bad faith to settle a claim. In such a case, the insurer is liable for the settlement to the extent the settlement is reasonable and paid in good faith." Besel v. Viking Ins. Co. of Wis., 146 Wn.2d 730, 736, 49 P.3d 887 (2002) (citing Evans v. Cont'l Cas. Co., 40 Wn.2d 614, 628, 245 P.2d 470 (1952)). Such a settlement agreement typically involves three features: "(1) a stipulated or

consent judgment between the plaintiff and insured, (2) a plaintiff's covenant not to execute on that judgment against the insured, and (3) an assignment to the plaintiff of the insured's coverage and bad faith claims against the insurer." Bird v. Best Plumbing Grp., LLC, 175 Wn.2d 756, 764-65, 287 P.3d 551 (2012) (citing Besel, 146 Wn.2d at 736-38). This type of settlement agreement is often referred to as a covenant judgment. Bird, 175 Wn.2d at 765.

"If the amount of the covenant judgment is deemed reasonable by a trial court, it becomes the presumptive measure of damages in a later bad faith action against the insurer." Bird, 175 Wn.2d at 765 (citing Besel, 146 Wn.2d at 738). The insured can recover from the insurer "the amount of a judgment rendered against the insured, even if the judgment exceeds contractual policy limits." Miller v. Kenny, 180 Wn. App. 772, 799, 325 P.3d 278 (2014). This is sometimes referred to as the "'judgment rule.'" Miller, 180 Wn. App. at 799 (quoting Besel, 146 Wn.2d at 735). "The insurer still must be found liable in the bad faith action and may rebut the presumptive measure by showing the settlement was the product of fraud or collusion." Bird, 175 Wn.2d at 765 (citing Mut. of Enumclaw Ins. Co. v. T&G Constr., Inc., 165 Wn.2d 255, 264, 199 P.3d 376 (2008)).

The propriety of this process has been considered and endorsed by our Supreme Court.

> Whether the insurer acts in bad faith by refusing to settle in good faith or by refusing to defend, the consequences to the insured are the same. The defense may be of greater benefit to the insured than the indemnity. The defense must be prompt and timely. An insurer refusing to defend exposes its insured to business failure and bankruptcy. An insurer faced with claims exceeding its policy limits should not be permitted to do nothing in the hope that the insured will go out of business and the claims

> simply go away. To limit an insurer's liability to its indemnity limits would only reward the insurer for failing to act in good faith toward its insured. We therefore hold that when an insurer wrongfully refuses to defend, it has voluntarily forfeited its ability to protect itself against an unfavorable settlement, unless the settlement is the product of fraud or collusion.

Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wn.2d 751, 765-66, 58 P.3d 276 (2002).

Reasonableness determinations are equitable proceedings to which a jury trial right does not attach. Bird, 175 Wn.2d at 768 (citing RCW 4.22.060(1)). Indeed, RCW 4.22.060(1) unequivocally removes from the province of the jury a factual determination of whether the amount of a covenant judgment is reasonable. As our Supreme Court stated, "there is no factual determination to be made on damages in the later bad faith claim, at least not with respect to the covenant judgment." Bird, 175 Wn.2d at 772. Rather, the role of the jury is to "make a factual determination of an insured's bad faith damages *other than* and *in addition* to the covenant judgment." Miller, 180 Wn. App. at 801.

"An action for bad faith handling of an insurance claim sounds in tort." Safeco Ins. Co. of Am. v. Butler, 118 Wn.2d 383, 389, 823 P.2d 499 (1992). Harm is an essential element of any tort claim, including the bad faith handling of an insurance claim. Butler, 118 Wn.2d at 389 (citing Burnham v. Commercial Cas. Ins. Co., 10 Wn.2d 624, 627, 117 P.2d 644 (1941)). In cases in which an insurer acts in bad faith regarding its duty to defend or settle, a rebuttable presumption of harm arises. Butler, 118 Wn.2d at 390-91.

The nature of a bad faith claim against an insurer requires that an ""almost impossible burden""" of proof be placed on either the insured or the

insurer. <u>Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.,</u> 161 Wn.2d 903, 921, 169 P.3d 1 2007 (quoting <u>Butler</u>, 118 Wn.2d at 390 (quoting ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES: REPRESENTATION OF INSURANCE COMPANIES AND INSUREDS § 2.09, at 40-41 (2d ed. 1988))). "Either the insured will face the almost impossible burden of proving that "'he or she is demonstrably worse off because of'" the insurer's bad faith or the insurer will face the almost impossible burden of proving the reverse." <u>Dan Paulson</u>, 161 Wn.2d at 921 (quoting <u>Butler</u>, 188 Wn.2d at 930 (quoting WINDT, <u>supra</u>, § 2.09, at 40-41)). "As between the insured and the insurer, it is the insurer that controls whether it acts in good faith or bad. Therefore, it is the insurer that appropriately bears the burden of proof with respect to the consequences of that conduct." <u>Dan Paulson</u>, 161 Wn.2d at 921.

## III

The primary question before us is whether the trial court erred by entering judgment in favor of Gosney in an amount that included the amount of the underlying judgment. Resolution of this complex matter requires a close inspection of the jury instructions and the answers on the special verdict form in light of the applicable law and the trial record.

We review de novo the legal effect of a verdict. <u>Estate of Dormaier v. Columbia Basin Anesthesia, PLLC</u>, 177 Wn. App. 828, 866, 313 P.3d 431 (2013). A special verdict asks the jury to return written findings on each issue of fact. CR 49(a). "Once a jury renders a verdict, the trial court must declare its legal effect." <u>Dormaier</u>, 177 Wn. App. at 866 (citing <u>Dep't of Highways v. Evans</u>

Engine & Equip. Co., 22 Wn. App. 202, 205-06, 589 P.2d 290 (1978)). The trial court should view the verdict in light of the jury instructions and trial evidence, construing the verdict to implement the jury's intent if consistent with the law. Dormaier, 177 Wn. App. at 866. If the special verdict answers conflict with one another, the trial court must attempt to harmonize them. If the special verdict answers are irreconcilable, the trial court must order further deliberations or a new trial. Dormaier, 177 Wn. App. at 866 (citing Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d 121, 136, 875 P.2d 621 (1994)).

## A

Our first inquiry is whether the special verdict form provided the jury with an opportunity to award damages to Gosney. We conclude that, by its plain terms, it did not.

We begin our analysis with Question 4 of the special verdict form—damages. Question 4a asked the jury, "Based on the jury instructions, what amount of damages, if any, do you find were incurred by Plaintiffs John Vose and Pizza Time?" The jury was further instructed not to duplicate damages across multiple claims and not to reduce the damages for contributory negligence. The jury awarded Vose and PT $100,000 for negligence, $20,000 for breach of contract, $300,000 for breach of the duty of good faith, $20,000 for breach of the CPA, and $20,000 for breach of the IFCA. The jury was then asked to designate the amount of damages incurred by Vose, as opposed to those incurred by PT. The jury found that Vose incurred $240,000 in damages.

Question 4 plainly does not provide the jury with an opportunity to award damages to Gosney.[13] Indeed, Question 4 is unique among the questions presented to the jury in that it is the *only* question that—instead of referencing the "Plaintiffs"—asks specifically about Vose and PT while not mentioning Gosney. The other questions presented to the jury ask about "Plaintiffs" generally—a term that included Vose, PT, and Gosney.

But the jury would have understood that Gosney stood to recover damages in this suit. Beninger informed the jury on the first day of trial that Gosney was "what's called an assignee. . . . [S]he is here standing, basically standing in Pizza Time's shoes to pursue the claims, if any, that Pizza Time has against Fireman's." Fireman's argued to the jury that Bundy and Beninger had colluded to commit fraud—a claim that existed only because of the assignment. The jury heard extensive testimony from Bundy concerning the assignment and the preclusive effect the assignment had on Vose's ability to file a claim against Fireman's. The jury heard testimony concerning the assignment from Vose. The jury heard opinion testimony concerning this particular assignment, and assignments generally, from multiple expert witnesses. The jury was reminded of the assignment again during closing argument.

The parties' presentation of evidence and the jury instructions confirmed that Gosney was a "Plaintiff" as contemplated by other questions on the special verdict form. Instruction 30 identified Vose and PT as the first party claimants.

---

[13] That Question 4a was designed for the jury to, if it chose, award damages to Vose and PT is made clear by the language of Question 4b, which began, "If you awarded damages in Question 4a . . . ."

Instruction 31 identified Gosney as the assignee of rights, claims, and causes of action of Vose and PT. The jury was instructed that, as an assignee, Gosney "steps into the shoes of assignor and has the rights of the assignor." Instruction 54 told the jury that, if it found breach of the duty of good faith to defend or settle and did not find fraud or collusion, its award for the Plaintiffs "must include the amount of the judgment on the arbitration award." From the testimony, argument, and instructions of the court, the jury would have understood that it was Gosney who would recover on the underlying judgment.

Moreover, because the underlying judgment represented only the presumptive measure of damages—theoretically allowing Gosney to seek damages *in addition to* the amount of the underlying judgment—the instructions collectively signaled to the jury that it could be asked to determine damages due to Vose, PT, and Gosney. Bird, 175 Wn.2d at 765. Despite this, no question on the special verdict form gave the jury an opportunity to award damages to Gosney.

Notwithstanding all of this, given the manner in which the case was argued in closing argument by Gosney's counsel, the instructions and the special verdict form were not inconsistent. Rather, the language instructing the jury that its verdict "must include" the underlying judgment was surplusage. This is so because, when an assignee is seeking only an amount equal to the amount of a covenant judgment, no factual question on the amount of damages is presented to the jury. If the assignee establishes an entitlement to relief, the amount of the covenant judgment is due as a matter of law. Here, because Gosney did *not*, in

closing argument, seek an award greater than the amount of the underlying judgment, there was no requirement—constitutional or otherwise—that the jury be asked to set out the amount of damages due to Gosney. Gosney's omission from Question 4 of the special verdict form was proper. The answers to Question 4 do not signal that the jury rejected Gosney's claim.

The trial court did not err by so ruling.

B

Our next inquiry is whether the jury found that Plaintiffs had established every element of the tort of bad faith failure to defend or settle.[14,15] The trial court ruled that it had. We agree.

Question 1a asked the jury, "Have the Plaintiffs proven all elements of any or all of their claims as to the Defendants?" The jury answered "Yes" for breach of the duty of good faith. Question 1b asked the jury, "If you answered 'yes' to Question 1a as to Breach of Duty of Good Faith, did you find a breach of the duty to defend or settle?" The jury answered "Yes."

We begin by noting that the jury was not asked two separate and distinct questions but, rather, two interrelated questions. This understanding is supported by the trial court's decision to designate the questions as Question 1a and Question 1b, rather than Question 1 and Question 2. Question 1a

---

[14] "The duty to act in good faith or liability for acting in bad faith generally refers to the same obligation." Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 385, 715 P.2d 1133 (1986) (citing Tyler v. Grange Ins. Ass'n, 3 Wn. App. 167, 173, 473 P.2d 193 (1970)). The source of that obligation is the same—the fiduciary relationship between the insurer and the insured. Tank, 105 Wn.2d at 385.

[15] Again, when a plaintiff proves all elements of the tort of bad faith failure to defend or settle and the defendant does not prove fraud or collusion, the plaintiff has established an entitlement to relief.

- 24 -

unequivocally asked the jury to find whether Plaintiffs had proved "*all* elements" of any or all of their claims. (Emphasis added.) The most natural way to understand Question 1b, therefore, is that it asked the jury to answer whether Plaintiffs had proved "*all* elements" of the tort of bad faith failure to defend or settle. The trial court's ruling is consistent with this understanding.

We therefore conclude that the jury's affirmative answer to Question 1b necessarily includes a finding of harm.

Fireman's argues to the contrary, asserting that Question 1b was designed to ask the jury only whether it had found a breach of the duty to defend or settle, not whether it had found all elements of the corresponding tort proved.[16] But Fireman's offers no explanation as to why the trial court would so inquire. Determining that the jury found breach alone proved would not have assisted the court. Such a finding would serve no purpose. On the other hand, a purpose was served by asking, in Question 1b, specifically about the tort of breach of duty to defend or settle, as opposed to the breach of the duty of good faith generally. As Instructions 53 and 54 make clear, different evidence was required to prove these different versions of the tort of breach of the duty of good faith.

Indeed, for the trial judge to have accepted Fireman's interpretation of Question 1b, the judge would have had to believe that, after a five-week trial during which the primary cause of action at issue was the claim that Fireman's committed the tort of bad faith breach of its duty to defend or settle, he nowhere

---

[16] Fireman's contends that it proved to the jury that no harm arose from its breach of the duty to defend or settle and that this explains the jury's decision to not include the amount of the underlying judgment in its award of damages.

- 25 -

asked the jury to declare whether it found that cause of action to have been proved. That is not a reasonable reading of the court's instructions and verdict form and it is unsurprising that the judge refused to adopt it.

Our understanding of Question 1a and 1b is further supported by other instructions to the jury. As discussed herein, harm is an essential element of the tort of bad faith. Butler, 118 Wn.2d at 389. Although the jury was not provided with an elements instruction pertaining to the tort of breach of the duty to defend or settle, the jury *was* appraised of the role that harm plays in proving the tort. Instruction 53 identified the element of harm as it pertains to both bad faith generally and bad faith failure to defend or settle. Harm was also identified as an essential element in the instructions pertaining to Plaintiffs' CPA and IFCA claims.

The jury found that Plaintiffs had proved all elements of the tort. This finding necessarily included a finding of harm.

C

Our next inquiry is whether the decision to award the underlying judgment amount was within the province of the jury. We answer in the negative.

The jury was properly instructed that Fireman's was liable for the entire amount of the underlying judgment if it breached its duty of good faith to defend or settle and failed to prove fraud or collusion in the settlement. As discussed herein, the jury found that Plaintiffs had proved all elements of the tort of bad faith failure to defend or settle—a finding that necessarily includes the element of

harm. The jury further found that Fireman's had failed to prove its affirmative defenses of fraud and collusion.

These factual findings are the necessary predicates to holding Fireman's liable for the underlying judgment. Whether the covenant judgment itself was reasonable was not a decision within the province of the jury. Bird, 175 Wn.2d at 768 (citing RCW 4.22.060(1)). Because Gosney did not request the jury to award damages in addition to the underlying judgment, the total amount of damages incurred by Gosney was likewise not a decision within the province of the jury. There were no other factual questions put to the jury pertaining to the underlying judgment.[17]

Accordingly, the decision to award the amount of the underlying judgment was not within the province of the jury.

The jury here was tasked with finding whether Plaintiffs had proved that Fireman's breached its duty of good faith to defend or settle and whether Fireman's had proved its affirmative defenses of fraud or collusion. After the jury made its findings, the trial court gave legal effect to the verdict.[18] There was no error.

---

[17] We therefore reject Fireman's contention that it cannot be held liable for the underlying judgment because it did not receive adequate notice of the arbitration.

The special verdict form used in this matter was substantially similar to the verdict form proposed by Fireman's. Fireman's chose not to ask the jury to make a finding concerning notice, thus forfeiting an opportunity to receive an explicit finding on the question. All factual questions put before the jury inhere in the verdict. CR 49(a); Sintra, Inc. v. City of Seattle, 131 Wn.2d 640, 659, 935 P.2d 555 (1997). It was Fireman's obligation to seek the jury's answer to any particular question properly before it. We must assume that all such questions were subsumed within the various questions set forth in the special verdict form.

[18] The trial court's ruling was not an additur. An award of additur is made pursuant to RCW 4.76.030. That statute provides:

If the trial court shall, upon a motion for new trial, find the damages awarded by a jury to be so excessive or inadequate as unmistakably to indicate that the

IV

Having concluded that the trial court did not err by entering judgment in favor of Gosney in the principal amount of the underlying judgment, we turn to Fireman's remaining contentions. Fireman's assigns error to two of the jury instructions. Fireman's also contends that the trial court erred by restricting its presentation of evidence and by refusing to excuse a juror. Finally, Fireman's contends that the trial court erred by ruling that it was collaterally estopped from contesting the underlying judgment. Each contention is addressed in turn.

A

Fireman's contends that two of the court's jury instructions did not correctly state the law.

We review the adequacy of jury instructions de novo. Hall v. Sacred Heart Med. Ctr., 100 Wn. App. 53, 61, 995 P.2d 621 (2000). "Jury instructions are sufficient if they (1) allow each party to argue its theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law." City of Bellevue v. Raum, 171 Wn. App. 124, 142, 286 P.3d 695 (2012) (citing Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, 107 Wn.2d 524, 529, 730 P.2d 1299 (1987)). "[A]n instruction that contains an erroneous statement of the applicable law is reversible error where it prejudices a

amount thereof must have been the result of passion or prejudice, the trial court may order a new trial or may enter an order providing for a new trial unless the party adversely affected shall consent to a reduction or increase of such verdict.
    When a trial court employs an additur, the court alters the jury's verdict by increasing the amount awarded. Herriman v. May, 142 Wn. App. 226, 234, 174 P.3d 156 (2007). In so doing, the trial court does not give effect to the verdict. Rather, it corrects the verdict (pursuant to statutory procedure and limitation).
    Here, the trial judge gave effect to the jury's verdicts. The judge did not correct or alter the verdicts. In so doing, the judge did not employ an additur.

- 28 -

party." Cox v. Spangler, 141 Wn.2d 431, 442, 5 P.3d 1265, 22 P.3d 791 (2000). Error is not prejudicial "unless it affects, or presumptively affects, the outcome of the trial." Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wn.2d 188, 196, 668 P.2d 571 (1983).

1

Fireman's first contends that the trial court erred by rejecting its proposed instructions defining "collusion" and instead providing an instruction that did not, it asserts, adequately define the term.

Fireman's submitted two proposed jury instructions regarding collusion. The first proposed instruction defined collusion as "undisclosed cooperation or agreement among two or more people for an improper purpose," and further provided that collusion "may be inferred through the conduct of those involved." The second proposed instruction was lengthy and stated:

> What constitutes collusion will differ with each situation. Collusion may be inferred from the circumstances. Factors that could demonstrate collusion include but are not limited to: whether there was concealment; whether the settlement was fairly and honestly negotiated; failure of the settling insured to consider viable available defenses; the length or duration of the arbitration; parallel conduct of the parties at the arbitration; whether a party's investigation and discovery were sufficient for that party and the court to act intelligently at the arbitration; and whether witnesses were subjected to vigorous cross-examination calculated to undermine the testimony.

The trial court rejected Fireman's proposed instructions and instead gave an instruction that defined collusion as "secret cooperation for an illegal or

dishonest purpose."[19]  The trial court provided the jury with a separate instruction regarding fraud.

On appeal, Fireman's contends that the trial court's instruction artificially constrains the definition of collusion and invites confusion about what types of agreements are "illegal." Fireman's also contends that, because the trial court did not instruct the jury that collusion could be inferred from attendant circumstances, the jury could have reasonably concluded that a finding of collusion required direct evidence.

Collusion is commonly defined as "[a]n agreement to defraud another or to do or obtain something forbidden by law," BLACK'S LAW DICTIONARY 321 (10th ed. 2014); and as a "secret agreement : secret cooperation for a fraudulent or deceitful purpose . . . : a secret agreement between two or more persons to defraud a person of his rights often by the forms of law." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 446 (2002).

Contrary to Fireman's assertions, nothing in the instruction given serves to constrain the definition of collusion or invite confusion about what constitutes an "illegal . . . purpose." The instruction is clear that collusion can be evidenced by secret cooperation for an "illegal *or* dishonest purpose," allowing Fireman's to argue to the jury that it could find collusion even *sans* illegal activity. (Emphasis added.)  Neither do the instructions indicate that direct evidence of collusion is required.  Instruction 9 properly instructs the jury that it must find collusion by

---

[19] The trial court also rejected Plaintiffs' proposed instruction defining collusion as "an agreement to defraud another or to do or obtain something forbidden by law."

clear, cogent, and convincing evidence. Instruction 2 properly instructs the jury that "[t]he law does not distinguish between direct and circumstantial evidence in terms of their weight or value in finding the facts in this case."

"The precise wording of the instructions is within the broad discretion of the court." Housel v. James, 141 Wn. App. 748, 758, 172 P.3d 712 (2007). The trial court did not abuse that discretion by offering a clear instruction that allowed each party to argue its theory of the case.

2

Fireman's also contends that the trial court erred by instructing the jury that a single violation of the Washington Administrative Code (WAC) constitutes bad faith.

Instruction 12 provides: "A violation, if any, of one or more of the following statutory or regulatory requirements is a breach of the duty of good faith, an unfair method of competition, an unfair or deceptive act or practice in the business of insurance, and a breach of the insurance contract." That instruction lists six unfair methods of competition and unfair or deceptive acts or practices found in WAC 284-30-330.

Instruction 24 provides: "For purposes of the [CPA], a breach of the duty of good faith or a single violation of a statute or regulation relating to the business of insurance is an unfair or deceptive act or practice. A single violation also affects the public interest." That instruction further provides: "If you find that a breach of the duty of good faith or a single violation of a statute or regulation

- 31 -

relating to the business of insurance has occurred, then you must find that the first three elements of a [CPA] violation have been proved."

Fireman's contends that a single violation of the WAC is insufficient to support a finding of bad faith. Fireman's relies on WAC 284-30-300 to support its contention. Pursuant to that regulation:

> The purpose of this regulation, WAC 284-30-300 through 284-30-400, is to define certain minimum standards which, *if violated with such frequency as to indicate a general business practice*, will be deemed to constitute unfair claims settlement practices.

WAC 284-30-300 (emphasis added).

Our Supreme Court previously rejected an argument similar to the one now pressed by Fireman's. See Indus. Indem. Co. of the Nw., Inc. v. Kallevig, 114 Wn.2d 907, 923-24, 792 P.2d 520 (1990). In that case, Industrial Indemnity argued that the trial court erred by instructing the jury that a single violation of WAC 284-30-330 constitutes an unfair trade practice. Kallevig, 114 Wn.2d at 921. Our Supreme Court disagreed.

> A violation of WAC 284-30-330 constitutes a violation of RCW 48.30.010(1),[20] which in turn constitutes a per se unfair trade practice . . . . This per se unfair trade practice may result in CPA liability if the remaining elements of the 5-part test for a CPA action under RCW 19.86.090 are established.
>
> . . . .
> The language of RCW 48.30.010 is plain and unambiguous. RCW 48.30.010 does not contain the frequency requirement set forth in WAC 284–30–300. RCW 48.30.010 prohibits insurers from engaging in any unfair trade practice. In other words, under RCW 48.30.010, a single violation of WAC 284-30-330 constitutes a statutorily proscribed unfair trade practice. Accordingly, an insured may establish a per se unfair trade practice under the CPA by

---

[20] RCW 48.30.010 prohibits insurers from engaging in unfair trade practices and permits the commissioner to promulgate regulations and define other acts and practices as unfair or deceptive.

demonstrating a violation of RCW 48.30.010 based upon a single violation of WAC 284-30-330.

Kallevig, 114 Wn.2d at 923-24.

The jury instructions correctly stated the law.

B

Fireman's next contends that it was prevented from presenting its case because it was not permitted to "call Beninger."

> At trial, Vose testified that Bundy and Beninger drove the settlement and arbitration. . . . If judgment is not entered for [Fireman's], at a minimum, [Fireman's] is entitled to a new trial because denying it the right to cross-examine Beninger—given his pivotal role in the fraud and collusion and given that key trial exhibits were his own statements—impeded [Fireman's] ability to present key defenses. This prejudice was exacerbated by the fact that both fraud and collusion under the jury instructions, required [Fireman's] to establish the speaker's intent. . . . [Fireman's] was thus given an improperly burdensome task—to prove fraud or collusion by clear and convincing evidence without cross-examining the person who orchestrated the false statements. This prejudice was magnified by Beninger's appearance as the lead trial attorney for Plaintiffs during the five week trial.

Br. of Appellant at 58-59 (footnote omitted).

Fireman's complains that it was "not permitted to call Beninger" but does not identify or assign error to any court order prohibiting it from calling Beninger as a witness. Rather, the record reveals that Fireman's itself moved in limine to bar Plaintiffs from offering as evidence Beninger's knowledge and testimony concerning the facts at issue in this litigation: "In particular, the Court should direct Mr. Beninger to refrain from testifying as a fact witness at trial or offering verbal commentary that takes the form of testimony during voir dire, witness questioning, opening statements, and closing argument." Defendants' Omnibus

Motions in Limine at 5. The trial court granted Fireman's motion and Beninger did not testify at trial.

The trial court granted Fireman's the relief that it sought. Fireman's attempt to appeal from that relief is unavailing.

C

Fireman's next asserts that the trial court improperly restricted its presentation of evidence by limiting the scope of an expert witness's testimony.

We review a trial court's admission or rejection of expert testimony for an abuse of discretion. State v. Weaville, 162 Wn. App. 801, 824, 256 P.3d 426 (2011). Expert witness testimony is admissible to assist the trier of fact in understanding the evidence or in determining a fact in issue. ER 702. Generally, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." ER 703.

Fireman's retained an expert witness, attorney Jeff Tilden, to offer opinion testimony regarding the settlement and arbitration processes. Tilden was deposed on November 26, 2014. During his deposition, Tilden testified that he was concerned about the settlement and arbitration processes. However, Tilden opined that there was nothing wrong with the settlement agreement itself and that it was *not* the product of fraud or collusion.

Prior to trial, both Plaintiffs and Fireman's moved in limine for an order prohibiting the presentation of undisclosed expert opinions. The trial court granted the requests.

During trial, Tilden offered expert testimony that varied from his deposition testimony. Tilden testified:

> By agreement, Mr. Bundy rolled over in the arbitration proceeding and put up no testimony at all to speak of. By agreement it appears that Mr. Bundy and the plaintiff's lawyers manufactured the argument that Ms. Heller was an employee of Mr. Vose's corporation. By agreement, the parties volunteered Mr. Vose's as . . . a liable defendant, despite the fact he had one spectacular argument for defeating liability, and a second one I believe is very good. By agreement, they defrauded the bankruptcy court or stood by while it happened.

Plaintiffs interposed an objection, asserting that Tilden's testimony constituted an undisclosed expert opinion in violation of the court's order. Plaintiffs argued that Tilden's testimony as to the manufacturing of Vose's liability contradicted his deposition testimony that the settlement agreement was not the product of fraud.[21] Fireman's responded by arguing that Tilden's testimony was based on new information gleaned from Vose's trial testimony.

The trial court reviewed Vose's trial testimony and determined that it did not vary from his deposition testimony.[22] The trial court ruled that there was no substantial change in circumstances and, accordingly, Tilden could testify as to his concerns regarding the settlement process but could not opine that the settlement agreement itself was the product of fraud or collusion, as such testimony would constitute a previously undisclosed expert opinion and thus be a

---

[21] Plaintiffs also objected to Tilden opining that Heller was not a PT employee and opining that Plaintiffs agreed to defraud the bankruptcy court. The trial court ultimately allowed Tilden to testify as to the Heller employment issue but prohibited Tilden from testifying as to the claim of bankruptcy fraud. On appeal, Fireman's has assigned error to only the trial court's ruling prohibiting Tilden from opining on fraud or collusion in the settlement agreement.

[22] Fireman's asserted to the trial judge that Vose testified at trial that "my lawyers told me I should commit fraud." The judge's review of the trial transcript revealed no such testimony.

violation of the order in limine. The trial court instructed the jury to ignore those parts of Tilden's testimony addressing the manufacturing of Vose's personal liability. Tilden then provided extensive testimony as to his qualms about the settlement and arbitration processes. Tilden testified that the settlement process "was a joint attempt to manufacture [a] bad faith claim down the road."

The trial court's ruling was not an abuse of discretion. Fireman's retained Tilden to opine on the settlement and arbitration processes. During his deposition testimony, Tilden opined that the settlement agreement was not the product of fraud. Tilden's trial testimony to the contrary constituted a previously undisclosed expert opinion. It was not based on information that was unknown at the time of the motion in limine. Accordingly, it constituted a violation of the trial court's previous order.

The trial court did not err by so ruling.

D

Fireman's next contends that the trial court erred by refusing to excuse a juror who worked with Vose's wife and was exposed to her out-of-court reactions to the case.

"Deciding whether juror misconduct occurred and whether it affected the verdict are matters for the discretion of the trial court, and will not be reversed on appeal unless the court abused its discretion." Breckenridge v. Valley Gen. Hosp., 150 Wn.2d 197, 203, 75 P.3d 944 (2003). The burden is on the party alleging juror misconduct to show that the misconduct occurred. State v. Hawkins, 72 Wn.2d 565, 566, 434 P.2d 584 (1967).

Following the submission of the case to the jury, one juror sent an e-mail to the bailiff:

I wanted to let the judge know that a co-worker of mine mentioned in a group setting a few weeks ago that she was in a meeting with Kimberly Hill (Kim Vose) and she stated that Kimberly seemed distracted, out of it, and not productive. Due to the requirements to maintain confidentiality, I didn't respond and extricated myself from the conversation. . . .

Because I do not work directly (nor does my colleague who made these comments) with Kimberly Hill, I do not have any idea how she normally presents herself in the work environment. . . . In fact, I have never worked directly with Kimberly or any of her colleagues on any official county matters. . . . I do not and have not socialized with Kimberly or any of her colleagues, or her direct manager.

Fireman's asked the trial court to excuse the juror. Fireman's was concerned that the juror had received information about Hill's emotional state that was not presented at trial and that Fireman's had no opportunity to cross-examine the individual who made the statements.[23]

The trial court determined that Hill heard the information third hand, did not respond, and terminated the conversation immediately. The trial court noted that the juror did not know the context of the information. The trial court determined that there were no grounds to disqualify the juror and, accordingly, denied Fireman's request.

The trial court's ruling was not an abuse of discretion. That the juror heard third hand information that Hill was "distracted, out of it, and not productive" was of no consequence. Such a disclosure establishes neither misconduct nor prejudice.

---

[23] The juror had previously disclosed her association with Hill during voir dire.

E

Fireman's next contends that the trial court erred by ruling that it was bound by the underlying judgment. Fireman's asserts that the "judgment rule" does not apply because a reasonableness determination cannot be the product of an arbitration. Fireman's also asserts that it cannot be held liable for the underlying judgment pursuant to a theory of collateral estoppel. Each contention is addressed in turn.

1

As discussed herein, once the amount of a covenant judgment is deemed reasonable, it becomes the presumptive measure of damages in a later bad faith action against the insurer. Bird, 175 Wn.2d at 765 (citing Besel, 146 Wn.2d at 738). The "judgment rule" binds an insurer acting in bad faith to the judgment rendered against its insured, even if the judgment exceeds contractual policy limits. Miller, 180 Wn. App. at 799.

Fireman's contends that it cannot be held liable for the underlying judgment pursuant to the judgment rule. This is so, it asserts, because a reasonableness determination cannot be the product of an arbitration.

As a preliminary matter, we note that, despite its numerous blanket assertions that a reasonableness determination cannot be the product of an arbitration, Fireman's has devoted only four sentences and a single footnote of its 190 pages of appellate briefing to a discussion of the merits of its contention. Fireman's cites to no authority, save an e.g. citation to the Uniform Arbitration Act, in support of its averment.

Parties are required to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996), remanded on other grounds, 132 Wn.2d 193, 937 P.2d 597 (1997). In addition, "'[w]here no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" State v. Logan, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)). Fireman's briefing on its assertion does not meet these expectations.[24]

Reasonableness determinations are a product of RCW 4.22.060. The legislature's purpose in enacting the statute was to facilitate contribution actions between (and allocate financial responsibility among) tortfeasors. "That statute

---

[24] We also note that Fireman's theory on appeal is different from the one it advanced in its motion for partial summary judgment. Fireman's argued therein that the judgment rule did not apply because Plaintiffs were not permitted to arbitrate the amount of a covenant judgment. According to Fireman's, the amount of the covenant judgment could only be determined through negotiation and settlement.

> Here, the settlement agreement provided that Plaintiffs . . . would attempt, within 30 days, to settle for a specific amount; but they never did. . . . There is therefore no settlement amount reached by negotiation and compromise. There is no settlement amount that could be evaluated under the [reasonableness] factors, and no negotiated amount as to which the test of collusion or fraud could be applied.
>
> Instead of a negotiated settlement amount, there is in this case an arbitration award determined in putative litigation. An arbitration award, determined on the merits, is not evaluated for reasonableness.

Fireman's Fund's Mot. for Partial Summ. J. at 12 (footnote omitted).

Contrary to Fireman's argument below, the settlement agreement explicitly provided for arbitration as a means of determining the final settlement amount. That fact, and the fact that Fireman's itself moved to stay the litigation until Plaintiffs could "conduct and conclude their arbitration to determine the final value of the settlement in their underlying litigation," may account for Fireman's assertion of a different argument on appeal.

was enacted as part of the tort reform act in 1981 to provide a means to allocate liability among joint tortfeasors. Originally under the statute, a trial court would determine whether a settlement amount between a tort victim and fewer than all tortfeasors was reasonable." Bird, 175 Wn.2d at 766 (citing Glover v. Tacoma Gen. Hosp., 98 Wn.2d 708, 716, 658 P.2d 1230 (1983), abrogated by Crown Controls, Inc. v. Smiley, 110 Wn.2d 695, 756 P.2d 717 (1988)). "If so, a nonsettling tortfeasor could offset that exact amount from a damages award at trial." Bird, 175 Wn.2d at 766. The Supreme Court adopted nine factors for trial courts to consider when making a reasonableness determination pursuant to RCW 4.22.060:

> "[T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released."

Glover, 98 Wn.2d at 717 (alteration in original).

The legislature's purpose in enacting the reasonableness statute had nothing to do with covenant judgments. Indeed, when lawyers first invoked reasonableness hearings as a means of facilitating covenant judgments, there existed neither a legislative nor a Supreme Court pronouncement that such actions were authorized. Nevertheless, eventually, the application of RCW 4.22.060 reasonableness hearings to the approval of covenant judgments was explicitly endorsed by our Supreme Court. See Bird, 175 Wn.2d at 767. The purpose of a reasonableness hearing in this setting is to present a negotiated

settlement to a neutral party—typically a judge—to protect the insurer from excess judgments and fraud or collusion between the settling parties. Bird, 175 Wn.2d at 765-66. These are similar to the concerns arising in contribution actions that necessitated the statute's adoption.

Arbitrators are a neutral party absent a material interest in the outcome of arbitration or a substantial relationship with a party. RCW 7.04A.110(2). Herein, Judge Burdell was a neutral party who determined an appropriate settlement amount. Judge Burdell also considered the nine reasonableness factors and determined that the settlement amount was reasonable.[25] Judge McPhee explicitly confirmed both the amount awarded and the reasonableness finding.[26]

That, by agreement, Judge Burdell imposed the damages amount on the parties (as opposed to the parties agreeing on the amount) is a more arms-length proceeding than that involved in the typical covenant judgment scenario. Additionally, Judge O'Donnell allowed Fireman's to present evidence to the jury on its assertions as to lack of notice, lack of an opportunity to participate in the underlying litigation, and other matters that Fireman's believed pointed to fraud or collusion.

Fireman's does not attempt to evaluate the proceeding here employed. That this exact approach has never been explicitly sanctioned by the Supreme Court does not necessarily mean that the procedure discussed in Bird is the

---

[25] Fireman's did not resist the entry of Judge McPhee's confirmation order nor did it appeal therefrom. The only relief it requested was the deletion of its name from the caption.

[26] The face of the arbitration award recites both "Plaintiffs' damages total: $10,800,289.00," and "A reasonable covenant judgment, considering all Bird/Besel factors, is $10,800,289.00."

exclusive appropriate procedure. On this briefing, we cannot make a reasoned decision on the question.

Neither does Fireman's address related questions. For instance, assuming that Fireman's argument has merit, was Fireman's required to raise the issue to the arbitrator? To the Thurston County superior court when it confirmed the arbitration award and reasonableness finding? To the King County superior court when Fireman's moved to compel the arbitration? Fireman's briefing does not acknowledge these questions, let alone analyze them. In addition, the law being as it is, we assume that other murky issues lie in wait, to be raised in a helpfully-briefed future case.

On this record, and on this briefing, Fireman's does not present a suitable opportunity for reasoned decision-making. Accordingly, its claim does not warrant appellate resolution. Palmer, 81 Wn. App. at 153.

Fireman's fails to establish that the judgment rule does not apply under these circumstances. It does not establish an entitlement to appellate relief.

2

As a corollary to its claim that the judgment rule was inapplicable, Fireman's asked the trial court to rule that it was also not bound to the underlying judgment by collateral estoppel. Fireman's contends that the trial court erred by ruling to the contrary.[27]

---

[27] Fireman's characterized the issue of collateral estoppel as its "defense." See Br. of Appellant at 21, 54-57. In its reply brief, Fireman's characterizes collateral estoppel as its "affirmative defense" and asserts that an order denying an affirmative defense cannot serve as a basis to award damages. Reply Br. of Appellant at 96-98.

Collateral estoppel is not an affirmative defense. Fireman's argued to the trial court that the judgment rule did not apply to bind it to the underlying judgment and, as a result, the only way

"The purpose of the doctrine of collateral estoppel is to promote judicial economy by avoiding relitigation of the same issue, to afford the parties the assurance of finality of judicial determinations, and to prevent harassment of and inconvenience to litigants." Lemond v. Dep't of Licensing, 143 Wn. App. 797, 804, 180 P.3d 829 (2008) (citing Hanson v. City of Snohomish, 121 Wn.2d 552, 561, 852 P.2d 295 (1993)). The proponent of the application of the doctrine has the burden of proving four elements:

> "(1) [T]he issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice."

Thompson v. Dep't of Licensing, 138 Wn.2d 783, 790, 982 P.2d 601 (1999) (quoting Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wn.2d 255, 262-63, 956 P.2d 312 (1998)).

Here, the trial court considered the four elements of collateral estoppel and found each element established. The trial court found that Fireman's had notice of the arbitration and an opportunity to intervene. The trial court found that the arbitration was "actually litigated." The trial court found that, at the arbitration, Vose's and PT's interests were in privity with Fireman's interests. Finally, in its order denying reconsideration, the trial court found that application of the doctrine would not work an injustice. Accordingly, the trial court ruled that Fireman's was collaterally estopped from contesting the underlying judgment.

---

it could be held liable for the underlying judgment was pursuant to a theory of collateral estoppel. Fireman's asked the trial court to rule on the issue of collateral estoppel and the trial court did so. This was not error.

An appellate court can affirm a trial court judgment on any basis within the pleadings and proof. Wendle v. Farrow, 102 Wn.2d 380, 382, 686 P.2d 480 (1984). The trial court's ruling on collateral estoppel provides such an alternative basis for affirmance. Fireman's had notice of the arbitration and an opportunity to intervene, as determined first by Judge Burdell, then by Judge McPhee, and finally by Judge O'Donnell in his ruling on collateral estoppel. As Judge O'Donnell ruled, (1) Judge McPhee's order entering judgment against Vose and PT and in favor of Gosney constituted a final judgment on the merits, (2) the arbitration hearing was "actually litigated"—a determination supported by the jury's finding that no fraud or collusion occurred, and (3) Fireman's was in privity with Vose and PT because it owed both contractual and statutory duties to its insured.

Finally, application of the doctrine did not work an injustice on Fireman's. As the trial court ruled,

> Fireman's Fund—a sophisticated, national insurance company with highly competent in-house and outside counsel—evaluated whether it should attend the arbitration hearing after receiving notice that it would occur. Fireman's Fund had options available to it when presented with that information. It made a decision to avoid the hearing altogether.
> An insurer places itself in a most difficult posture when it has notice of settlement but then fails to take steps to sufficiently protect its interests.
> Given that backdrop, the Court cannot find that the procedural irregularities that occurred during the arbitration amounted to an injustice. Nor can this Court find that binding Fireman's Fund to the arbitration award would work an injustice. This is particularly true in the posture of an insurance case, when "so long as the carrier 'has notice and an opportunity to intervene in the underlying action against the tortfeasor,' it will be bound by the findings, conclusions, and judgment of the arbitral proceeding."

Lenzi v. Redland Ins. Co., 140 Wn.2d 267, 274, 996 P.2d 603, 606 (2000).

Fireman's fails to establish an entitlement to appellate relief.[28]

V

We next address Gosney's cross-appeal. Gosney contends that the trial court erred by declining to award interest on the underlying judgment commencing on the date on which the settlement agreement was signed. We disagree.

Prejudgment interest is allowable "(1) when an amount claimed is 'liquidated' or (2) when the amount of an 'unliquidated' claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract." Prier v. Refrigeration Eng'g Co., 74 Wn.2d 25, 32, 442 P.2d 621 (1968). A claim is liquidated where "the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." Prier, 74 Wn.2d at 32 (citing CHARLES T. McCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 54 (1935)).

Here, the settlement agreement provided for a 12 percent interest rate accruing and compounding annually on the unpaid damages from the date of signing, September 2, 2008. The settlement agreement further provided that "the

---

[28] Fireman's also contends that the trial court erred by not granting its CR 50(a) motion on its affirmative defenses of fraud and collusion. Although Fireman's assigns error to the trial court's ruling, its argument on appeal consists of a single paragraph disputing factual questions not at issue here. In any event, fraud and collusion were factual matters resolved by the jury, which heard extensive and conflicting testimony on the matters.

parties agree to have the full amount of the damages and/or judgments determined by stipulation approved as reasonable by the Court, or arbitration."

By the terms of the settlement agreement, the damages were unliquidated. See Hansen v. Rothaus, 107 Wn.2d 468, 477, 730 P.2d 662 (1986) ("Because reliance upon opinion and discretion is necessary in determining whether the amounts expended were reasonably necessary and reasonable in amount, medical expenses, here cure, are unliquidated."). It was not until Judge McPhee entered an order confirming the arbitration award as reasonable and entering judgment against Vose and PT for $10,800,289 that the exact amount due was determinable.

Gosney also contends that the terms of the insurance policy require that interest accrue from the date of the settlement agreement. The policy provides payment for "[a]ll interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance." Because Fireman's has never paid its policy limits, Gosney asserts that interest on the $2.5 million partial judgment should accrue from the date of the settlement agreement. But the "entry of the judgment" did not occur until November 16, 2012—the terms of the policy do not contemplate prejudgment interest.

The trial court entered judgment with interest on the underlying judgment amount compounding annually as of November 16, 2012, the date of confirmation of the arbitration award by Judge Tabor. The trial court did not err by so doing.

- 46 -

VI

In their cross-appeals, Vose and PT contend that the trial court erred by ruling that they were judicially estopped from having judgment entered in their favor on the jury's verdicts. We agree.

A

We review an application of the doctrine of judicial estoppel for an abuse of discretion.[29] Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007); Cunningham v. Reliable Concrete Pumping, Inc., 126 Wn. App. 222, 227, 108 P.3d 147 (2005); see Taylor v. Bell, 185 Wn. App. 270, 283 n.13, 340 P.3d 951 (2014) (reviewing a trial court's summary judgment decision based on judicial estoppel). A decision constitutes an abuse of discretion when it is manifestly unreasonable or based on untenable grounds or reasons. Kreidler v. Cascade Nat'l Ins. Co., 179 Wn. App. 851, 861, 321 P.3d 281 (2014).

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

In re Marriage of Fiorito, 112 Wn. App. 657, 664, 50 P.3d 298 (2002).

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" Arkison, 160 Wn.2d at 538 (quoting Bartley-Williams v. Kendall, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006)). "There

---

[29] The parties dispute the standard of review applicable to the trial court's order. Because the trial court granted Fireman's motion after the entry of the jury's verdict—and entered findings of fact after reviewing the entire record—we apply the abuse of discretion standard.

are two primary purposes behind the doctrine: preservation of respect for judicial proceedings and avoidance of inconsistency, duplicity, and waste of time." Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 861, 281 P.3d 289 (2012). Judicial estoppel is intended to protect the integrity of the courts—it is not designed to protect litigants. Arp v. Riley, 192 Wn. App. 85, 91, 366 P.3d 946 (2015), review denied, 185 Wn.2d 1031 (2016).

A trial court's determination of whether to apply the judicial estoppel doctrine is guided by three core factors:

> (1) whether the party's later position is clearly inconsistent with its earlier position, (2) whether acceptance of the later inconsistent position would create the perception that either the first or the second court was misled, and (3) whether the assertion of the inconsistent position would create an unfair advantage for the asserting party or an unfair detriment to the opposing party.

Taylor, 185 Wn. App. at 282 (citing Anfinson, 174 Wn.2d at 861).

> As a general rule, if a debtor in a bankruptcy proceeding fails to report a cause of action and obtains a discharge or confirmation, a trial court may apply judicial estoppel to bar the action. This prevents a debtor from protecting the asset from creditors by representing to the bankruptcy court that no claim exists and then asserting in another court that the claim does exist. But "[a] party's nondisclosure of a claim in bankruptcy does not automatically lead to estoppel in a future suit," especially where a party lacks knowledge or has no motive to conceal the claims.

Arp, 192 Wn. App. at 92-93 (footnotes omitted) (citing Ah Quin v. County of Kauai Dep't of Transp., 733 F.3d 267, 271 (9th Cir. 2013) quoting Miller v. Campbell, 137 Wn. App. 762, 771, 155 P.3d 154 (2007), aff'd on other grounds, 164 Wn.2d 529, 192 P.3d 352 (2008)).

B

Following entry of the jury's verdict, the trial court ruled that Vose was judicially estopped from recovering any damages in this matter:

> Plaintiff's attempt to distinguish a claim vs. reservation of damages in support of their proposition that Mr. Vose's failure to disclose the settlement agreement in the bankruptcy proceeding is of no moment. What is abundantly clear is that the bankruptcy petition required Mr. Vose to disclose equitable and future interests of *all* his assets and other personal property of any kind. Trial Ex. 384. His reservation of an ability to seek damages in the instant case falls under this broad category. Despite his awareness of this lawsuit and his reserved claim for damages, he failed to disclose them.
>
> All of the elements of judicial estoppel have been met here with respect to Mr. Vose's retention of his right to pursue damages. His position during this case is clearly inconsistent with his declaration during this bankruptcy proceeding. His recovery here surely creates the perception that he has misled the bankruptcy court. His ability to collect these funds will amount to a fraud on the bankruptcy court, as any funds he stands to collect from this award should flow to his creditors.

The trial court also ruled that, because Vose was the sole shareholder of PT, PT was likewise judicially estopped from recovering damages.

As a preliminary matter, we note that the trial court made no findings to support its conclusion that PT was judicially estopped from recovering on the jury's verdict. Vose declared personal bankruptcy in 2010. PT has never declared bankruptcy. The trial court made no findings of alter ego, comingling of assets, a failure to adhere to corporate formalities, or any other finding that could support a ruling extending judicial estoppel to PT. Rather, the trial court simply noted that Vose is the sole shareholder of PT. In this, the court erred.

In addition, the trial court failed to adequately consider the nature of the interest retained by Vose and whether disclosure of that interest would have changed the outcome of the bankruptcy.

The bankruptcy petition required Vose to list "contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." "At the commencement of bankruptcy, the debtor must disclose all of his assets to be included in the bankruptcy estate for the potential benefit of creditors." Miller v. Campbell, 164 Wn.2d 529, 540, 192 P.3d 352 (2008) (citing 11 U.S.C. § 521(a)(1)). "The bankruptcy estate includes all the debtor's potential claims or causes of action that existed at the time he or she filed for bankruptcy." Miller, 164 Wn.2d at 540 (citing 11 U.S.C. § 541(a)(1)).

Contrary to the trial court's conclusion, it was not proved that, at the time of the bankruptcy filing, Vose had any such asset, claim, or cause of action to disclose.

Initially, it is apparent from the language of the settlement agreement that Vose had no right or ability to personally institute a claim or lawsuit against Fireman's. Vose could not initiate a lawsuit against Fireman's himself and he could not compel Gosney to file such a suit. As a corollary, Vose could not prevent Gosney from filing suit against Fireman's nor could he control any of the claims that Gosney might decide to bring.

In addition, Fireman's presented no evidence whatsoever—and the trial court made no findings—as to the precise nature and value of Vose's interest. Pursuant to 11 U.S.C. § 541(a)(1), the bankruptcy estate is established at the

"commencement of a case," i.e., at the filing of the petition. A debtor's recovery for an act that occurs *after* the "commencement of a case" is not at issue. As the proponent of the judicial estoppel defense, Fireman's bore the burden of proving that, at the time that Vose filed for bankruptcy, he possessed some cognizable and valuable interest. But Fireman's offered no such proof. Rather, the record indicates that all of Vose's claimed personal damages originated *postbankruptcy*, when Fireman's refused to settle and refused to engage in arbitration. Indeed, had Fireman's agreed to the terms of the settlement agreement and paid the policy limits, Gosney would have released all claims against Fireman's (with or without Vose's assent), leaving Vose with no damages to recover and no claim or cause of action to assert.

Finally, Fireman's presented no evidence that disclosure would have changed the outcome of the bankruptcy. Fireman's offered no evidence to prove that any creditor would have requested a plan amendment if Vose had disclosed his potential interest in a lawsuit. Fireman's offered no evidence that the bankruptcy court would have changed the relief that it imposed had Vose disclosed the potential interest. Such proof is necessary. Arp, 192 Wn. App. at 99-101. Thus, even assuming that Vose had *something* to disclose to the bankruptcy court, Fireman's failure to produce *any* evidence that disclosure would have changed the outcome of the bankruptcy proceedings precludes application of judicial estoppel.

C

Judicial estoppel does not exist to create a windfall for the proponent party. Arkison, 160 Wn.2d at 540 (quoting Bartley-Williams, 134 Wn. App. at 102). Rather, the doctrine is designed to protect the integrity of the judicial process. Arp, 192 Wn. App. at 100. Here, Fireman's offered insufficient evidence—and the trial court made insufficient findings—to support applying the doctrine of judicial estoppel to either Vose or PT. Vose's alleged failure to disclose an amorphous and possibly valueless interest to the bankruptcy court does not preclude him from recovering damages arising from the *postbankruptcy* filing bad faith conduct of the proponent party. Similarly, given that PT is a separate legal entity that *never* filed a bankruptcy petition, application of the doctrine to it was entirely unwarranted.

We reverse the trial court's order on judicial estoppel and remand for the entry of a judgment in favor of Vose and PT consistent with the jury's verdicts.[30]

VII

Finally, Fireman's contends that the trial court erred by awarding Vose and PT attorney fees and costs, including a lodestar multiplier of 1.25.[31]

---

[30] Fireman's contends that the trial court erred by awarding Gosney the underlying judgment amount because, it avers, the court's ruling on judicial estoppel "must be understood to negate the jury's finding of harm, by reducing all damages to zero." Br. of Appellant at 51. Because harm is an essential element of the bad faith handling of an insurance claim, and because Plaintiffs cannot establish harm as a result of the court's judicial estoppel ruling, Fireman's reasons, it was error to award Gosney the underlying judgment amount.

Fireman's cites to no authority to support its assertion that the application of judicial estoppel against Vose or PT should somehow preclude Gosney, who bargained for and obtained an assignment of Vose's prebankrupcy claims and causes of action prior to Vose filing for bankruptcy, from recovering against Fireman's. In any event, because we reverse the trial court's order on judicial estoppel, we need not further address this contention.

[31] Fireman's has not assigned error to the trial court's award of attorney fees and costs to Gosney.

- 52 -

A

We review a trial court's award of attorney fees for an abuse of discretion. Miller, 180 Wn. App. at 820. Washington follows the American rule "that attorney fees are not recoverable by the prevailing party as costs of litigation unless the recovery of such fees is permitted by contract, statute, or some recognized ground in equity." McGreevy v. Or. Mut. Ins. Co., 128 Wn.2d 26, 35 n.8, 904 P.2d 731 (1995). The CPA and IFCA both permit an award of attorney fees and costs to the prevailing party. RCW 19.86.090; RCW 48.30.015(3). The "prevailing party" in a lawsuit is the one who receives a judgment in his favor. Am. Fed. Sav. & Loan Ass'n of Tacoma v. McCaffrey, 107 Wn.2d 181, 194-95, 728 P.2d 155 (1986).

Attorney fees and costs may also be awarded pursuant to Olympic Steamship Co. v. Centennial Insurance Co., 117 Wn.2d 37, 52-53, 811 P.2d 673 (1991). Under Olympic Steamship, "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." 117 Wn.2d at 53. "The equitable basis established in Olympic Steamship for attorney fee awards is limited to efforts necessary to establish coverage for claims against the insured and is based on the rights of the insured." Polygon Nw. Co. v. Am. Nat'l Fire Ins. Co., 143 Wn. App. 753, 795-96, 189 P.3d 777 (2008).

Here, the trial court found that Plaintiffs were the prevailing parties on all causes of action, including the CPA, IFCA, bad faith, contract, and negligence.[32] The trial court found that the claims and defenses "involved a common core of facts, evidence, testimony and theories, in which the time devoted to discovery, pretrial motions and preparation, trial and post-trial matters of this intertwined action cannot be reasonably segregated." The trial court awarded Vose and PT attorney fees totaling $400,812.50 and costs totaling $4,800.00.

Vose and PT were the prevailing parties on all claims advanced against and by Fireman's. Accordingly, Vose and PT may recover attorney fees and costs associated with advancing the CPA and IFCA claims. RCW 19.86.090; RCW 48.30.015(3). Because the trial court found that these claims were intertwined with and inseparable from the other claims advanced by Vose and PT—a finding supported by the record—it did not err by declining to parse out the fees and costs associated with each individual claim. Miller, 180 Wn. App. at 823-24.

Fireman's also contends that the trial court erroneously awarded Vose and PT attorney fees associated with the arbitration. There is no indication in the record that the trial court awarded Vose and PT fees or costs associated with the underlying arbitration.[33] However, even if it did, we conclude that such an award

---

[32] Fireman's first contends that the trial court's judicial estoppel rulings should have served as a basis to deny an attorney fee award to Vose and PT. Because we reverse that decision, we need not further discuss this theory.

[33] The only citation to the record that Fireman's provides concerns the trial court's award of costs to Gosney. The trial court noted that its award to Gosney "does not include costs associated with the underlying arbitration & reasonableness hearing." Contrary to Fireman's assertions, this does not establish that the trial court awarded Vose and PT costs associated with the underlying arbitration.

is tenable pursuant to <u>Olympic Steamship</u>. As discussed herein, Vose and PT assigned all claims and causes of action to Gosney in the settlement agreement. But before Gosney could step into the shoes of Vose and PT and pursue her claims against Fireman's, Plaintiffs were forced into an arbitration proceeding compelled by Fireman's. The fees and costs associated with this arbitration were thus necessary predicates for Vose and PT to receive the benefit of their insurance contract. <u>Olympic S.S.</u>, 117 Wn.2d at 53.

There was no abuse of discretion.

B

Adjustments to the lodestar are reserved for rare occasions. <u>Miller</u>, 180 Wn. App. at 825. Although the lodestar presumptively represents a reasonable fee, "occasionally a risk multiplier will be warranted because the lodestar figure does not adequately account for the high risk nature of a case." <u>Chuong Van Pham v. Seattle City Light</u>, 159 Wn.2d 527, 542, 151 P.3d 976 (2007).

Here, the trial court found that a lodestar multiplier was warranted.

> A lodestar multiplier of 1.25 is appropriate given the contingent representation and risks this matter presented at the inception and throughout the nearly 7 years (or beyond) of non-payment, and due to the exceptional quality of representation provided to the plaintiffs by their counsel. Although the judgment is substantial, it has not been paid. Further, at the time of pursuing the claims, and accepting and defending the cross-claims, the risk of non-payment was significant.

The trial court's ruling was sound. Plaintiffs' attorneys have received no payment pursuant to the claims advanced against Fireman's during the many years that this complex litigation has stretched on, and have faced a high degree

of risk that they would never be paid at all. The trial court did not abuse its discretion by utilizing a modest lodestar multiplier.

We reverse the trial court's order on judicial estoppel, affirm in all other respects, and remand the matter to the trial court for any necessary proceedings consistent with this opinion.[34]

_____

We concur:

_____

_____

---

[34] Gosney, Vose, and PT also request an award of appellate fees. Vose and PT are entitled to an award of appellate fees pursuant to the CPA. RCW 19.86.090; Ewing v. Glogowski, 198 Wn. App. 515, 526, 394 P.3d 418 (2017). Gosney is entitled to an award of appellate fees pursuant to Olympic Steamship, 117 Wn.2d at 53. Upon proper application, a commissioner of our court will enter an appropriate award.

LEACH, J. (dissenting) — I dissent because I disagree with the trial court's decision to add $10.8 million to the jury's verdict. While no special verdict question asked the jury whether Fireman's Fund Insurance Company proved that its breach of its duty to defend did not harm the plaintiffs, the jury's answers to the special verdict questions answer this question and show that the jury found this breach caused no harm to plaintiffs. For this reason, the trial court improperly added $10.8 million to the jury's damage award.

The following review of the jury instructions and the jury's answers to the special verdict form questions show that the jury followed the court's instructions and did not intend to award this amount because it affirmatively found that Fireman's breach of its duty to defend and/or settle did not harm plaintiffs Pizza Time Inc. and Pizza Time Holdings of Washington (collectively Pizza Time) or John Vose.

Plaintiffs presented evidence supporting several theories of Fireman's failure to act in good faith. In addition to its breach of its duty to defend and/or settle, plaintiffs presented evidence of Fireman's failure to timely respond to pertinent communications, failure to investigate, and failure to obtain its insured's consent before pursuing a trial continuance.

Special verdict question 1a asked the jury whether the plaintiffs had proved all elements of any or all of their claims. It also told the jury that the elements were described in the jury instructions. The jury answered yes for each of the plaintiffs' five claims, including breach of duty of good faith.

Special verdict question 1b asked whether the jury found a breach of the duty to defend or settle, to which the jury also answered yes. This had significance to the jury.

Instructions 17, 53, and 54 provided a different rule for determining damages for a breach of this duty than the rule for other breaches of the duty of good faith.

Instructions 17 and 53 each provided in part,

> If you find that Fireman's failed to act in good faith by breaching its duty to defend and/or settle, then the law presumes that Plaintiffs Pizza Time and Mr. Vose were injured and that the failure to act in good faith was the proximate cause of this injury. <u>You are bound by that presumption unless you find that Fireman's failure to act in good faith did not injure Plaintiffs Pizza Time and Mr. Vose.</u>

Instruction 54 provided in part,

> If you find for the Plaintiffs on their claim that Fireman's Fund/American Insurance Company failed to act in good faith as to duty to defend or settle, <u>your verdict must include the amount of the judgment on the arbitration award, unless you further find for Fireman's Fund/American Insurance Company on its affirmative defense that the settlement was the product of fraud or collusion. The judgment amount is $10,800,289, plus interest.</u>

> . . . .

> <u>As to the duties to defend and/or settle, Fireman's Fund/American Insurance Company has the burden of proving that any act of [sic] failure to act in good faith did not injure harm, damage or prejudice the plaintiffs.</u>

Instructions 17, 53, and 54 all direct the jury to treat a breach of the duty to defend and/or settle differently from other breaches of the duty of good faith when determining damages. This explains in part why the court included question 1b in the special verdict form.

In addition, the court instructed the jury about an affirmative defense to Fireman's breach of the duty to defend and/or settle. Instruction 52, about waiver, provided in part,

> In this case, Fireman's duty to provide a defense to Plaintiffs Pizza Time and Mr. Vose was excused if Fireman's has proved, by a

preponderance of the evidence, that Plaintiffs Pizza Time and Mr. Vose waived their right to that performance under the contract.

Special verdict question 3[1] asked the jury whether the defendants had proved all elements of any or all of their defenses. The jury answered yes for the defense of waiver and no for all other defenses, including fraud and collusion. This means that the jury found that Pizza Time and Vose waived Fireman's duty to provide a defense. Instructions 17 and 53 defined the elements of the breach of good faith claim.[2] These instructions distinguished the failure to defend and/or settle from the other breach of good faith claims. The court told the jury it must presume that Fireman's breach of the duty to defend and/or settle harmed Pizza Time and Vose unless Fireman's proved this breach did not injure Pizza Time and Vose. For the other breach of good faith claims, the plaintiffs had to prove "[t]hat Plaintiff Pizza Time or Mr. Vose was damaged."

Because the jury found that Fireman's had proved that Pizza Time and Vose had waived Fireman's duty to defend and/or settle, the jury necessarily also found that Fireman's had proved that its breach of this duty did not harm Pizza Time or Vose. As a result, plaintiffs had not proved a breach of good faith claim based on a breach of the duty to defend and/or settle. The trial court and the majority both fail to account for the jury's waiver decision.

---

[1] Special verdict question 2 asked about contributory negligence. The jury found that the defendants had not proved the plaintiffs were contributorily negligent.

[2] These instructions are identical. Fireman's objected to the court giving the same instruction twice. The record does not disclose the trial court's reason for doing so.

Instruction 54 required the jury to include the judgment amount in its verdict if it found for the plaintiffs "on their claim that Fireman's Fund/American Insurance Company failed to act in good faith as to duty to defend."

Special verdict question 4a asked the jury what amount of damages it found that plaintiffs Vose and Pizza Time incurred. The jury answered,

|  | Damages: |
|---|---|
| Negligence: | $100,000.00 |
| Breach of Contract: | $ 20,000.00 |
| Breach of Duty of Good Faith: | $300,000.00 |
| Breach of Consumer Protection Act: | $ 20,000.00 |
| Breach of Insurance Fair Conduct Act: | $ 20,000.00 |

Special verdict question 4b asked the jury whether these damage amounts included the $10 million judgment. The jury answered no.

No special verdict question asked the jury whether Fireman's proved that its breach of its duty to defend and/or settle did not harm the plaintiffs. But the jury's answers to questions 1b, 3, 4a, and 4b, when viewed in the context of the instructions as a whole, answer this question. The jury found that Fireman's breached its duty to defend and/or settle (answer to 1b) but that Pizza Time and Vose waived performance of this duty (answer to 3). If the jury followed instructions 17 and 53, as we must presume they did, its decision not to include the judgment in its damage award for the breach of the duty of

-4-

good faith means two things. First, that the jury found this breach did not injure Pizza Time or Vose. And second, that some other breach of this duty did injure them.

The jury's answers to the special verdict questions are consistent with each other and demonstrate that the jury followed the court's instructions. Under these circumstances, the trial court did not have the authority to add $10.8 million to the jury's damage award.

The majority premises its contrary conclusion on a conflation of the jury's answer to special verdict question 1b. The majority relies in part on the structure of questions 1a and 1b for its analysis (answers included):

**QUESTION 1a: Plaintiffs Claims**

Have the Plaintiffs proven all elements of any or all of their claims as to the Defendants? (The elements of these claims are described in the accompanying Jury Instructions.)

ANSWER: (Check "yes" or "no")

| | |
|---|---|
| Negligence | _X_ Yes ___ No |
| Breach of Contract | _X_ Yes ___ No |
| Breach of Consumer Protection Act | _X_ Yes ___ No |
| Breach of the Insurance Fair Conduct Act | _X_ Yes ___ No |
| Breach of Duty of Good Faith | _X_ Yes ___ No |

**Question 1b**

If you answered "yes" to Question 1a as to Breach of Duty of Good Faith, did you find a breach of the duty to defend or settle?

_X_ Yes ___ No

The majority incorrectly concludes that the jury's answer to question 1b means that the jury found that Fireman's breach of the duty to defend or settle harmed Pizza Time and Vose. I disagree.

The majority equates a finding of breach of a duty with a finding of all elements required to prove a claim of breach of Fireman's failure to act in good faith as to its duty to defend and/or settle, including the element of harm. To support its decision to ignore the plain language of question 1b, the majority offers a structural analysis: the two questions are designated 1a and 1b instead of 1 and 2. According to the majority, this means that they are "interrelated questions" rather than "separate and distinct questions" and question 1b thus really asks whether plaintiffs have proved all elements of a breach of the duty to defend and/or settle claim.

This analysis has at least two flaws. First, it ignores the well settled rule that the use of different words generally reflects an intent to have a different meaning. The court's use of the words "all elements" in question 1a and "breach" in question 1b would generally be understood to reflect different meanings. Notably, the trial court, in its memorandum opinion, did not say that it intended the meaning attributed to it by the majority. Second, it ignores the history of the special verdict form's drafting.

The court drafted the form given to the jury using the defendants' proposed verdict form. Questions 1, 2, and 3 of the defendants' proposed form mirrored questions 1a, 2, and 3 of the court's form. The court chose to insert a question between 1 and 2, so it renumbered question 1 as 1a and inserted a question 1b. It did the same thing when it

inserted question 4b, renumbering 4 as 4a.[3] This allowed the court to avoid renumbering the other questions and permitted the parties to discuss issues about these questions using the same number for the proposed verdict and the court's form. Unfortunately, the court's conferences with the parties about instructions were held after hours and off the record. So we have no additional information about the verdict form's history.

The majority also contends that it would not make sense for the court to ask whether it had found a breach of the duty to defend rather than whether it had found all elements of the corresponding tort proved. But the record provides multiple explanations. The parties contested whether the presumed injury rule described in instructions 17 and 53 and the presumed damage rule described in instruction 54 applied to all breaches of an insurance company's duty of good faith or just to a breach based on a failure to defend and/or settle. To preserve this issue for appeal, the court needed to make a record about which duty of good faith was breached and whether the jury's damage award included the amount of the judgement. This explains questions 1b and 4b, both inserted by the court into the defendants' proposed verdict form.

I agree with the majority's resolution of the remaining issues that it resolves.

_Leach, J._

---

[3] The court also modified defendants' proposed question 4 and omitted their proposed question 5.